36 C.C.P.A.(Patents)
### OSBORNE v. PATTERSON et al.
### Patent Appeal No. 5476.

United States Court of Customs and Patent Appeals.

June 1, 1948.

Rehearing Denied Sept. 30, 1948.

818

Max W. Zabel, Edward C. Gritzbaugh, and Benton Baker, all of Chicago, Ill., for appellant.

Sidney A. Ochs, of Detroit, Mich. (Charles M. Thomas, of Washington, D. C., and Harness, Lind, Pattee & Harris, of Detroit, Mich., of counsel), for appellees.

Before GARRETT, Chief Judge, and HATFIELD and JACKSON, Associate Judges.

JACKSON, Associate Judge.

This is an appeal in an interference proceeding from a decision of the Board of Interference Examiners awarding priority of invention of the subject matter of two counts copied from the patent of appellant by appellees for the purpose of provoking this interference.

The interference involves appellant's patent No. 2,328,291, dated August 31, 1943, on an application, serial No. 403,198, filed January 19, 1941, and an application of appellees, serial No. 360,068, filed August 7, 1940. The Borg-Warner Corporation is the assignee of appellant's patent and the Chrysler Corporation is assignee of the application of appellees.

The counts read as follows:

"1. A variable speed transmission comprising in combination a countershaft type unit having low, second and direct drive ratios, and a planetary type unit having direct drive and overdrive ratios, automatically controlled means for effecting shifts between second and direct drive in the countershaft unit and between direct drive and overdrive in the planetary unit, said means being adapted to effect up shifts from second to direct to overdrive direct, and manually operated overcontrol means for effecting down-shifts from overdrive direct to overdrive second to second.

"2. A variable speed transmission comprising in combination a countershaft type unit having low, second and direct drive ratios, and a planetary type unit having direct drive and overdrive ratios, automatically controlled means for effecting shifts between second and direct drive in the countershaft unit and between direct drive and overdrive in the planetary unit, said means being adapted to effect upshifts from second to direct to overdrive direct, manually operated overcontrol means for effecting down-shifts from overdrive direct to overdrive second to second, and means for limiting said down-shifts above a predetermined speed of operation of one of the units from overdrive direct to direct only."

After the preliminary statements had been opened, appellant was placed under an order to show cause why judgment on the record should not be entered against him for the reason that all of the dates alleged by him were subsequent to the filing date of appellees.

Thereupon appellant moved to dissolve the interference alleging that the counts are not readable on the disclosure of the application of appellees; that the disclosure of appellees is inoperative to perform the functions stated in the counts; that appellees' disclosure is radically different from that of appellant's patent;

and that the counts should be interpreted in the light of the patentee's disclosure. The motion to dissolve was opposed by appellees on the ground that the allegations contained therein are not supported in fact and in law.

The Primary Examiner denied appellant's motion and final hearing was had before the Board of Interference Examiners for a review of the Primary Examiner's decision. The board in its decision affirmed both the conclusion and reasoning given by the examiner.

The inventions of the parties in general concern a power transmission device for motor vehicles directed to speed change transmissions and the controls thereof. The devices comprise a countershaft transmission connected in tandem with an overdrive unit of the planetary type. Each unit is designed so as to be actuated by means of an electromagnetically controlled power device in accordance with the speed of the vehicle and the manipulation of the conventional accelerator pedal.

The structures upon which the issue of fact depends are very complicated and highly complex. It will not be necessary, however, to describe those structures in detail.

■ It will be noted that the counts are identical except for the last clause appearing in count 2, and the parties appear to agree that such difference does not affect the questions before us. There is no contention that the language of the counts is vague, ambiguous, or indefinite, and, therefore, they must be construed as broadly as their language will reasonably permit. Mantz v. Kronmiller, 168 F.2d 100, 35 C.C.P.A., Patents, ——. For the reasons hereinbefore set out, we will confine our discussion to count 1.

That count defines a transmission structure comprising a combination of a countershaft type transmission with two forward speeds. Those transmissions are conventional and well known in the automotive art. The novelty which is said to be here involved is in the providing of mechanism to make possible and to effectuate the bringing into operation of sequences of combinations of the transmission's speed or gear positions in the ordinary operation of the structure. The novel parts of the combination in the structure are recited in the count as "automatically controlled means" and a "manually operated overcontrol means." The automatically controlled means is made effective by being responsive to conditions obtaining in the structure, and the manually operated overcontrol means is such that it will supercede the automatically controlled means by manual operation.

■ It is the contention of appellant that the means disclosed by appellees with respect to the automatically controlled means does not respond to the count because appellees use as a responsive element, in effecting the gear shift from second to direct, a separate speed responsive switch and also a centrifugal clutch, which is a distinct and separate element for effecting the overdrive in the planetary transmission in which the shift from direct to overdrive is accomplished. Arguing in support of that contention, appellant insists that the "automatically controlled means" requires that the responsive element thereof must be a single or unitary device. We can not agree with such contention. It has been held many times in this and other courts that a means for performing any function includes all of the elements contributing to such performance, regardless as to the number or kind of such elements. Mantz v. Kronmiller, supra.

With respect to the "manually operated overcontrol means" by which down-shifts are made from overdrive direct to overdrive second speed and from overdrive second to second speed in place of the normal reverse of sequence of upshifts, taken care of by the automatic means, reads on the disclosure of appellees in their system which is under control of an accelerator pedal operated switch. When that switch is closed by full depression of the pedal, as the machine is working in overdrive direct within a set range of speeds, it will "kick down" the transmission to overdrive second speed in conjunction with the effect of the centrifugal clutch upon the operation of the throttle,

thus obtaining a reversal of torque. Such operation is accomplished without opening the pedal switch. If such switch were opened, direct drive might be restored in the countershaft transmission during speed which is below the set range to shift down from the overdrive. Therefore, in our opinion, the shift down sequence, obtained as above set out, is determined by a manual operation, and consequently fully responds to the limitation "manually operated overcontrol means" of the count.

It is contended by appellant that because the second down shift in appellees' device is made by operation of the centrifugal clutch, that such down shift is wholly automatic and without manual control. However, the centrifugal clutch is clearly only one of the elements of the manually operated means. The foot pedal must first be operated in order to bring about the second shift of the speed sequence and condition it for the second shift thereof, and it must be manipulated to allow the centrifugal clutch to be operated and at the same time prevent reshift in the countershaft transmission to direct drive, and thus prevent selection of the second shift in the overcontrol means. Consequently the clutch as well as the pedal comprise the means. Since no structure is recited in the count defining the means, the expression "manually operated overcontrol means" must be a definition of the means as a whole when functionally viewed. That limitation of the count can not properly be interpreted in a restricted fashion to some unidentified subcombination of the means, as appellant appears to contend. Therefore, in our opinion, the disclosure of appellant supports the count, as was held by both the Primary Examiner and the board.

While the devices of the parties are different, such difference is not so great that they will not both support the same count, and we find nothing in the record which could require reading into the count limitations which fit only the disclosure of appellant.

Since we are of opinion that the counts are supported by the application of appellees, we find no error in the decision of the Board of Interference Examiners.

Diminution of the record was suggested by each of the parties, and in consequence thereof certain papers from the Patent Office were certified to this court pursuant to a writ of certiorari. Since it was not necessary to our decision to consider such papers, costs will be taxed against each of the parties for the printing of the papers of each of them brought here on certiorari.

For the reasons hereinbefore set out, the decision of the board is affirmed.

Affirmed.

By reason of illness, O'CONNELL, Associate Judge, was not present at the argument of this case and did not participate in the decision.